Filed 5/6/15  P. v. Demirjian CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>SEVAK DEMIRJIAN,<br><br>　　Defendant and Appellant. | 2d Crim. No. B253460<br>(Super. Ct. No. LA071817)<br>(San Luis Obispo County)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

　　　　　　The Court on its own motion modifies the opinion filed herein on April 30, 2015, to reflect the following change:  next to the caption of the opinion, page 1, change "(San Luis Obispo County)" to "(Los Angeles County)."

　　　　　　There is no change in the judgment.

Filed 4/30/15 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SEVAK DEMIRJIAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B253460<br>(Super. Ct. No. LA071817)<br>(San Luis Obispo County) |

Sevak Demirjian appeals from the judgment following his conviction by jury of second-degree burglary (Pen. Code, § 459, counts 1, 4 & 19);[1] identity theft (§ 530.5, subd. (a), counts 2, 5, 6, & 9); access card forgery (§ 484f, subd. (b), counts 3 & 7); forgery (§ 475, subd. (c), count 11); false impersonation (§ 529, count 8); access card theft (§ 484e, subd. (d), count 10); assault with a firearm (§ 245, subd. (a)(2), counts 12, 13 & 14); unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a), counts 15 & 20); criminal threats (§ 422, subd. (a), count 18); and resisting executive officers (§ 69, counts 21 & 22). The jury also found true multiple allegations that appellant was armed and used a firearm (§§ 12022, subd. (a)(1) & 12022.5, subd. (a)); and it acquitted him of second-degree robbery, count 17). The trial court sentenced him to state prison for 14 years, 8 months.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

Appellant contends that the trial court (1) abused its discretion by granting the prosecution's motion to consolidate four cases for trial, and (2) violated his right to present a complete defense by restricting expert testimony. He also asserts that prosecutorial misconduct denied him a fair trial. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Prosecution Evidence

*Bloomingdale's Crimes (Counts 1-14)*

On August 4, 2012,[2] appellant went to Bloomingdale's with his girlfriend ("Luiza") and charged sunglasses to Carig Youredjian's Bloomingdale's credit card account. Appellant told sales associate Paula Cohen he was Carig's son (Haig Youredjian) and was on her account. Appellant's wallet contained identification cards bearing Haig's name. Appellant did not have Carig's credit card with him. He charged the sunglasses to her account by entering her social security number into a machine and presenting Haig's identification. He charged other items to Carig's account in different departments of the store.

Loss prevention manager Kerondo Dolberry monitored appellant's transactions throughout the store. He apprehended appellant and took him into an office with Diana Osorio, a loss prevention detective. At their direction, appellant removed the contents of his clothing, including a wallet, placed them in his hat, and handed them to Osorio. In addition to Haig's identification card, appellant's wallet contained Haig's Macy's card and Carig's tax form and personal check. Dolberry and Osorio handcuffed appellant to a bench. When he said the handcuffs were too tight, they loosened them, and appellant slipped away. He ran toward his hat and wallet, and pointed something that looked like a "very small black gun" at Osorio and Sarkeis Tomeh, another employee. He said he would shoot Osorio.

Osorio alerted assistant store manager Aaron Rose that appellant had a gun, and said to get out of his way. Tomeh called 911. Rose waited outside the store for the

[2] All subsequent dates refer to the year 2012.

2

police. Appellant came out of the store, pointed what appeared to be a gun at Rose's head, and told Rose to drop his phone. Appellant fled before the police arrived.

*Unlawful Taking of Ivan Franco's Vehicle (Count 15)*

On August 8, appellant went to an auto shop and asked Fabian Leyna about a nearby car that was for sale. Leyna took him to see its owner, Ivan Franco. Appellant asked to take Franco's car for a five-minute ride, and offered to leave a driver's license with Franco. Franco agreed. Appellant took Franco's car and never returned it.

*Macy's Crimes (Counts 17, 18 & 19)*

On September 8, Paul Barker, a Macy's loss prevention staff member, saw appellant in the watch department. He recognized him from a previous watch department theft. Appellant selected some watches and entered the men's department. Barker directed security personnel to monitor appellant on Macy's closed circuit system. Barker cleared each stall in the fitting room area shortly before appellant took some shirts into a stall. Barker entered the adjacent stall and heard the sound of tags being ripped. Immediately after appellant left the area, Barker found an empty watch box in the stall which appellant had vacated.

As appellant left Macy's, Barker approached and tried to apprehend him. Appellant said he would stab Barker with his knife. Barker stood in front of appellant, to block him. Appellant pulled out a black pocket knife and said, "I'm going to stab you and kill you if you don't let me go."

*Unlawful Taking of Alvin Arceo's Vehicle*
*and Related Crimes (Counts 20-22)*

On September 9, appellant's girlfriend Luiza distracted Alvin Arceo, a night shift nurse at Holy Cross Medical Center by requesting blankets for a patient. Arceo left his office, where he kept his backpack and car keys, to get the blankets. Arceo's car keys and his 2007 Toyota Highlander were missing the next morning.

On September 10, after receiving a "hit" from Arceo's Highlander's "LoJack responder," Los Angeles Police Officers Jose Torres and Jason Jacobson went to the hit location and found the Highlander parked on the street. Torres and Jacobsen and two

3

other officers waited near the Highlander.  Appellant drove the Highlander toward Torres, and pulled over after Torres drove back toward the Highlander.  Appellant got out and stood on the driver's side of the Highlander; Luiza stood on the passenger side.  They walked toward Torres until he ordered them to stop.  Luiza complied.  Appellant threw something down, ran away from Torres, and encountered two other officers.  Appellant resisted the combined efforts of Officers Torres and Jacobson to arrest him.  Torres found the Highlander keys near the spot from which appellant had thrown them.

Defense Evidence

Appellant testified and admitted taking merchandise from Bloomingdale's and using Carig's social security number.  He denied that he used a gun at Bloomingdale's.  He did pull out his "gun-shaped lighter" and aim it at the loss prevention officers, "like it was a real gun," and also pointed it at Rose.  He did not threaten to kill or shoot anyone.  He threw the lighter into some bushes after running away.

Appellant denied that he took Franco's car on August 8.  He knew Leyna and the area where he worked because he used to deliver uniforms to Leyna's workshop, but he was not in that area on August 8.

Appellant admitted that he went to Macy's with Luiza on September 8.  He planned to steal an expensive jacket but changed his mind.  He did not take any watches into a fitting room.  Appellant denied that he carried a knife on September 8 but later admitted that he did have a knife in Bloomingdale's and that he always or sometimes carried a knife.  He denied that he threatened Barker.

Appellant testified that Luiza told him she had borrowed the Highlander from a friend.  She did not tell him that she stole it until the police car drove toward them on September 10.  After the officers stopped appellant, he tried to get up because their weight was on his back and he was having trouble breathing.

4

DISCUSSION

I.

*Consolidation*

Appellant contends that the trial court abused its discretion by granting the prosecution's motion to consolidate his four cases for trial. We disagree.

Procedural Background

The prosecutor moved to consolidate appellant's four cases, and argued the charges were part of a month-long theft crime spree by appellant and his female accomplice. The prosecutor further argued that the assaultive elements of the department store theft crimes did not alter their class. Appellant's counsel asserted the crimes were "four distinct, separate types" that were not connected. In granting the motion, the court observed that the crimes occurred during a "very short period of time" and that the identity theft charges in the cases bore similarities.

We review a trial court's order granting consolidation for abuse of discretion. (*People v. Vines* (2011) 51 Cal.4th 830, 855.) The law favors consolidation because it "promotes efficiency." (*People v. Myles* (2012) 53 Cal.4th 1181, 1200.)

Section 954 provides in part: "An accusatory pleading may charge two or more different offenses . . . of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." Charges are considered to involve the same class of crimes when they involve a "'common element of substantial importance.'" (*People v. Mendoza* (2000) 24 Cal.4th 130, 160.) If this requirement is met, the defendant has the burden of showing prejudice from joinder of the charges. (*People v. Ochoa* (1998) 19 Cal.4th 353, 409.) The factors relevant to determining prejudice are whether (1) evidence of the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain charges are unusually likely to inflame the jury; (3) a relatively weak case was joined with a relatively strong case so that the aggregate evidence had a spillover effect and altered the outcome on the relatively weak charge; or (4) one of the charges carried the death penalty. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1315.)

5

The trial court properly ruled that section 954 authorized the consolidation of appellant's four cases. They all involved theft crimes which occurred within a period of several weeks. Appellant's girlfriend Luiza was involved in both department store crime incidents and the Arceo vehicle taking. As appellant testified, he and Luiza took property to support their drug habits. Appellant used false identification in the Franco vehicle taking and in the crimes at both department stores. He used force to resist arrest at both department stores, and after taking Arceo's Highlander. While the evidence was not cross-admissible, that factor alone is not sufficient to establish prejudice because "(1) the offenses were properly joinable under section 954, and (2) no other factor relevant to the assessment of prejudice demonstrates abuse of discretion." (*People v. Geier* (2007) 41 Cal.4th 555, 577, overruled on other grounds in *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305.)

Appellant argues that the consolidation of his cases was prejudicial, among other reasons, because the weapon charges could have inflamed the jury as to the resisting arrest offense. We disagree. His consolidated case did not involve any "charge or evidence particularly calculated to inflame or prejudice a jury, such as the child molestation charges in *Coleman* [*v. Superior Court* (1981) 116 Cal.App.3d 129]." (*People v. Balderas* (1985) 41 Cal.3d 144, 174.) Nor did the consolidation involve spillover to weak cases from relatively strong cases. (*People v. Bradford*, *supra*, 15 Cal.4th at p. 1315.) There were multiple witnesses linking appellant to the crimes in each case. Appellant has failed to establish that the consolidation of his cases was prejudicial. (*Ibid.*)

## II.

### *Expert Testimony*

Appellant argues that the trial court abused its discretion in limiting the testimony of his expert witness, and thereby violated appellant's "constitutional right to present a complete defense." We disagree.

This claim concerns the three assaults with a firearm upon Bloomingdale's employees charged in counts 12 through 14, and related firearm allegations. Appellant

fled the scene and the police did not recover a firearm. Appellant testified that he did not have a "gun" in his possession. He pointed a gun-shaped lighter at the employees. The prosecution relied on testimony from the victims to prove that appellant carried and used a firearm. Appellant sought to present testimony from firearms expert Patricia Fant regarding firearms, gun-shaped lighters, and whether she could tell if appellant was pointing a real firearm at his victims from viewing him on Bloomingdale's' surveillance videos. The court permitted Fant to testify that "lighters in the form of handguns" exist, but excluded her opinion as to whether the item appellant held in the video was a real "gun" because the victims did not testify "based on the video." It also excluded her testimony about whether gun-shaped lighters fit the legal definition of firearms. The court instructed jurors that a lighter in the shape of a handgun is not a firearm.

We review a trial court's rulings admitting or excluding evidence for abuse of discretion. (*People v. McDowell* (2012) 54 Cal.4th 395, 426.) The court acted within its discretion in excluding Fant's opinion that she could not determine from viewing the Bloomingdale's videos whether appellant was holding a gun or a gun-shaped lighter in his hand. The court accurately observed that the victims perceived the item in person, and did not base their testimony that appellant used a gun upon the video.

Because the trial court did not abuse its discretion in limiting Fant's testimony, we reject appellant's claim that the exclusion of Fant's opinion violated his "constitutional right to present a complete defense." The application of ordinary rules of evidence to exclude cumulative evidence does not infringe on a defendant's right to present a defense. (*People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103.) Appellant makes no showing that the trial court's rulings resulted in "the complete exclusion of evidence intended to establish" his defense. (*People v. Cunningham* (2001) 25 Cal.4th 926, 999.) To the contrary, the court admitted Fant's testimony regarding the existence of gun-shaped lighters. Furthermore, it instructed the jury, "If you find that it was a lighter/gun, that does not meet the definition of firearm pursuant to [the charged] section."

7

*Prosecutorial Misconduct*

Appellant claims that prosecutorial misconduct denied him a fair trial, and that the trial court thus erred by denying his mistrial motion. The record belies his claim.

Appellant bases this claim upon a brief incident that occurred during the prosecutor's argument to the jury concerning Arceo's Highlander. While arguing, the prosecutor suggested there was evidence that appellant "did talk to Detective Berrera," regarding Arceo's Highlander. Appellant's counsel objected, and argued the prosecutor was discussing something that was not in evidence, which was referenced on a projection slide.[3] The trial court immediately directed the prosecutor, "Don't argue it. It's not evidence," and directed him to move past the slide. The court added that it was "not going to be submitted to the jury as well," and directed the jury not to send the court "notes asking for outlines of the closing arguments."

After the conclusion of closing arguments, appellant's counsel moved for a mistrial because the prosecutor's slide "put out" the "idea" that appellant "somehow had confessed." The trial court noted that the prosecutor had removed the slide quickly when instructed to do so. The court notes further that it had repeatedly admonished the jury that counsel's arguments were not evidence. It also offered to repeat that admonishment later. In addition, the court stated that it was watching the jurors and they had not "been watching the screen much."

A prosecutor's misconduct violates the federal Constitution when it comprises a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process. (*People v. Hill* (1998) 17 Cal.4th 800, 819.) In this case, the prosecutor arguably committed misconduct by displaying a slide that misstated the evidence, although the record is less than clear as to the precise content

_____

[3] During cross-examination the prosecutor asked appellant whether he spoke with Detective Berrera after his arrest for taking the Highlander, and whether he told Berrera he was aware the Highlander was stolen. Appellant responded that he did not remember any conversation with her. The projection slide is not part of the record.

of the misstatement. However, the trial court immediately sustained appellant's objection and took prompt corrective action. This isolated, brief incident was harmless under any standard of review. (Compare *People v. Hill*, *supra*, at pp. 818-819.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

9

Michael K. Kellogg, Judge

Superior Court County of Los Angeles

_____

Caneel C. Fraser, under appointment by the Count of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Chung L. Mar, Jessica C. Owen, Deputy Attorneys General, for Plaintiff and Respondent.